June, 1809.

BAILEY
v.
LEWIS.

HEZEKIAH BAILEY, JAMES JUDSON and GIDEON BEARDSLEY, Committee of the Presbyterian Society of NEW-STRATFORD, against FREDERICK LEWIS, WILLIAM SCOTT, ABNER CABLE and WILLIAM WHEELER.

A bond was given to *A.*, *B.* and *C.*, committee of an ecclesiastical society, and to their successors in office; after the removal of the obligees named in the bond, the successors brought an action on the bond in their own names: Held, that the action was well brought.

THIS was an action of debt on bond, in the penal sum of 1,200 dollars, executed by the defendants to *Elisha Hawley*, *Ezra Lewis* and *Ephraim Sherwood*, a committee of the presbyterian society of *New-Stratford*, and to their successors in office, alleging that the plaintiffs are successors in office to the obligees named in the bond.

The defendants having prayed oyer of the bond and

Where a fund was bequeathed to the ecclesiastical society of *N. S.*, the interest of which was to be applied for the purpose of maintaining a free school in one of the districts, it was held, that an agreement by the society to divert this fund from the object for which it was given, and apply it to the support of the ministry, was void, being a fraud upon third persons.

condition, it appeared that the bond was to be void on the payment of 800 dollars by the first of *April* (then) next, to the said obligees, or their successors in office. The plea then alleged, that *A. G. Scott*, on the 25th of *May*, 1805, made his will, and therein, among other things, directed that his notes and money be placed on ample security at interest, at the discretion of his executors, and the parish of *New-Stratford*, (or their agent,) and the interest paid annually to his wife *Susan*, for life, and at her decease, the principal to belong to the parish of *New-Stratford*, the interest of which to be applied for the purpose of maintaining a free school in the *Centre District;* his *Sharp* house and land to be sold, and the avails applied with the other money. The plea further alleged, that *Scott* died on the 12th of *October*, 1805, and on the 25th, the will was proved and approved, and an appeal taken to the superior court by the defendants, his heirs at law; that on the 5th of *January*, 1807, while the appeal was pending, said society agreed with the defendants, that they should execute this bond for 800 dollars, (estimated at one quarter of the amount given by the will to the society,) and that thereupon the society would desert their trust, and would prevent the application of the money to the school district, and apply it to the support of the gospel, and that if it ever was applied otherwise, the heirs should recover it of them; that the bond was executed in pursuance of this agreement, and for no other cause or consideration; that the defendants no further prosecuted their appeal; and that the society, on the 5th of *January*, 1807, deserted their trust, renounced all claim to the legacy, and resigned up to the defendants all sums of money which might accrue to them by the will. The plea also alleged, that the plaintiffs were prosecuting this action for the sole and exclusive benefit of said society.

To this plea there was a demurrer; and the superior court adjudged the plea to be insufficient.

*Daggett*,(a) in support of the judgment.

1. This action cannot be sustained by the plaintiffs in their own names. If a bond be given to a certain inn-keeper, merchant, &c. *and his successor*, the individual who happens to be the actual successor, cannot maintain an action in his own name. The term *successor* is applicable only to a corporation; and if it be inserted in an obligation to any other, it is to be rejected as surplusage. 6 *Vin. Abr.* tit. *Corporations*, (G. 6.) p. 275. Are the committee of an ecclesiastical society a corporation? They clearly are not at common law. No statute has made them such.

It is inquired, who shall sue? It is not necessary to say that the *society* shall sue. There are obligees named in the bond. It does not appear that these persons are dead; but if any of them are dead, their survivors may sue. On the principle for which we contend, it does not vary the case, that the nominal obligees are removed from office, and others appointed in their place; for the addition of the office to their names is merely *descriptio personarum*, and the words " to their successors" are inoperative.

Will it be contended, that the statute under the title of " *Ministers*" gives the plaintiffs, as the society's committee for the time being, power to bring an action on this bond? Over what species of property have the legislature given the committee the powers there specified? Over such only as has been granted or seques-

(a) *Chapman* was to have argued on the same side, but was not in court when the cause came on.

tered for the use and support of the ministry. See both the preamble and enacting part of the 16th section. The powers given by the 17th section relate to the same subject matter, and are given " for the purpose and end aforesaid," referring to the preceding section. The 18th section gives the committee for the time being *the same powers* as their predecessors had, but no other powers. In this case, the property was not bequeathed for the support of the ministry, but for a very different object, *viz.* that of maintaining a free school in a particular district.

2. The consideration of this bond was illegal, being a fraud upon third persons. It was given upon an agreement made to defeat a trust—to abandon a valuable interest belonging to the *Centre School District*, and apply it to an object totally diverse. The education of children was the testator's object. This arrangement applies the fund to the support of the *Presbyterian Ministry*. *Willis et al.* v. *Baldwin, Doug.* 450. and *Jackson* v. *Duchaire*, 3 *Term Rep.* 551. were cited.

*R. M. Sherman* and *Hatch*, contra.

Two objections are taken to a recovery:

First, it is contended, that a bond made to a society's committee, and their successors in office, will not support an action in favour of such successors. To determine the force of this objection, it is necessary only to advert to the provisions of our statute on the subject,(a) and to the course of practice and decisions under it. For it is not claimed, upon the general principles of the common law, that this action would be sustainable, in favour of the present plaintiffs.

(a) Tit. 114.

The 16th section of the "Act for the settlement, support, and encouragement of ministers," &c. authorizes, in general terms, the selectmen of a town, where there is but one ecclesiastical society, and the committees of ecclesiastical societies, or a committee appointed by a town or society, for that end, as the case may be, to demand, receive, take care of, and improve, the lands, moneys, &c. sequestered, or given, for the support of the ministry, in such town or society, according to the true intent and design of the grant, donation, or sequestration. To facilitate the execution of this trust, it is provided by section 17. "That the selectmen, and committee aforesaid, or the major part of them, shall and may make all necessary contracts, and commence, prosecute, and pursue all needful suits, actions and causes in the law, for the purpose and end aforesaid." Then follows section 18. which gives to the successors of such selectmen, or committees, "the same power, *in their own names*, to act, appear, prosecute, and pursue in and upon *any* contract, suit, action, or cause, for and concerning the matters aforesaid, *as fully* as those, whom they succeed in the office aforesaid, *might, or could do*, if they had not been removed."

It may be asked here, what force, or effect, can be given to the clause last recited, upon the construction contended for on the other side? It was not surely inserted for the mere purpose of authorizing successors to sue, *in their own names*, upon a contract to themselves. This would be simply declaring, that such successors, when appointed, should be a committee; and would be repeating, in substance, the provisions of the clause next preceding. This section does not particularly regard the case of a contract made to successors, by name, after their election to office; but it gives them the general power, " in their own names," to prosecute, &c. " upon *any* contract," &c. as fully as those

whom they succeed, *might* have done, if they had not been removed. It is not necessary, indeed, to discuss, or determine the question, whether successors may maintain an action, in their own names, on a contract to a former committee simply, without naming successors. It is enough for us to show, that this may be done, where the contract or obligation is expressly made to the former committee, and their successors, *eo nomine.*

The practice and decisions upon this clause of the statute, so far as they have been ascertained, have been in perfect conformity to the ideas here advanced. It is understood to have been the constant practice for successors to sue in their own names, in such cases; and it is known, that in some instances, where this point has been made, the decisions of the superior court have sanctioned the practice. The case of *Judd et al.* v. *Woodruff*, 2 *Root*, 298. and that of *Bierce et al.* v. *Kellogg*,(a) decided in *Litchfield* county, *August* term, 1808,

*(a)* JOSEPH PIERCE ET AL. Committee of Donations for the First Ecclesiastical Society in *Cornwall*, against JUDAH KELLOGG, Executor of the last will, &c. of NEHEMIAH BEARDSLEY.

*Superior Court, Litchfield County, August term,* 1808.

THIS was an action on a note for 120 dollars, given by the testator to *John Calhoun* and others, committee, &c. and their successors in said office, dated *January* 6th, 1804.

In 1802, the testator and several other persons undertook to raise, by subscription, a fund for the support of the ministry in the first ecclesiastical society in *Cornwall.* An instrument was drawn up, which they called a *charter of donations.* In this, they agreed to raise the sum of 5,000 *dollars,* or upwards, for the support of the ministry, and directed the manner of appropriation. The principal sum was always to be kept untouched, and the interest to be applied to the payment of a minister. They agreed also to give their notes to what they called *the committee of donations,* payable on demand, and the interest payable annually, for the sums by them severally subscribed to the

June, 1809.<br>BAILEY<br>v.<br>LEWIS.

June, 1809.

BAILEY
v.
LEWIS.

fully warrant this assertion. In the former of these cases it was determined, that where land is granted to a society's committee, *and their successors*, the latter may maintain ejectment in their own names. In *Bierce et al.* v. *Kellogg* it was decided, that successors may sue, in their own names, on a note of hand to a former committee, and their successors. The question there arose upon demurrer, and was fully considered. The only difference between that case, and the one at bar is, that, in the for-

charter; and if the notes should be paid on *any 13th day of December in any year*, they might be paid in cattle, iron, &c. and the charter was to become obligatory on the subscribers, provided the society should accept it, and become responsible to make good any deficiency that might by any accident happen to be made in the amount of the fund, so as to keep it good, on or before the 1st of *December*, 1803, and have it recorded in their records. There were subscribers to this charter to the amount of about 4,000 dollars, among whom was the testator, who subscribed 120 dollars. The charter was accepted by vote of the society, and recorded in *May*, 1803. In the charter it was also provided, that the society should annually appoint a committee, to be called a *committee* of *donations*, who should have the care of the fund; and that the several subscribers should execute their notes to this committee for the amount of their subscriptions.

The testator executed his note to *John Calhoun* and others, *committee of donations for the first ecclesiastical society in Cornwall, and to their successors in said office*, on the 6th day of *January*, 1804, for 120 dollars, the amount of his subscription. The interest on this note was regularly paid, and endorsed, till *January*, 1807; when the testator died, and the executor refused to pay either principal or interest.

In *March*, 1808, an action was brought on the note in the name of *Joseph Bierce and others, committee of donations, &c.* and successors in said office to *John Calhoun, &c.* The manner in which this committee originated was shortly stated in the declaration. The cause was appealed to the superior court. The defendant in his plea recited the whole of the charter of donations, and averred that the note was given in satisfaction of the subscription to the charter, and then averred that the society had not made themselves liable to make good deficiencies which might happen in the fund, and that deficiencies had happened by means of sundry losses which were particularly set forth in the plea.

mer, the note was given to a committee, appointed by the society to manage its funds, in pursuance of the powers conferred by section 16th of the statute; a circumstance, which did affect the decision, and which does not render it the less applicable to the point in debate. Indeed, in one case, the superior court went much farther, and determined, that even the deacons of a church might support an action in their own names,

The plaintiffs traversed that part of the plea, which related to deficiencies in the fund, and set forth the vote of the society accepting the charter.

To this there was a demurrer.

The first and principal exception was to the declaration: That it ought to have been brought in the name of the society, and not in the name of the *committee*. And 1 *Root*, 440, 441. was cited, and much relied on. It was urged, that the committee of donations was a committee not known in law; that they had no beneficial interest; and that they could not maintain an action.

It was also insisted, that as 5,000 dollars had not been raised, no right of recovery existed in favour of any person or corporation: the condition on which the right was to vest not having been complied with.

To the first exception it was replied, that the cause of action was founded on a contract between the parties; that the testator himself had designated the persons to whom he would pay the amount of his note; that he had expressly contracted to pay to them, and to such persons as should be appointed to succeed them in their office; *that he had also agreed, that the society* should appoint a committee under that denomination; that as the contract was express, no action could be maintained in the name of the society; and 1 *Root*, 53. 2 *Root*, 298. *Swift*, 182, 183. *Statutes of Connecticut*, p. 317, 318. were cited.

To the 2d exception it was replied, that the testator had given his own construction to the charter. It was nowhere said, that if 5,000 dollars were not raised, their subscription should be void; and as the subscriptions had all been made, and the charter accepted by the society, and recorded, long before the note was given; and as he had paid interest on the note several years, it should not now be permitted him to

on a note given to the former deacons, and their successors in office. 1 *Root*, 53.

But further: if this action be not sustainable by the plaintiffs, it may be asked in whose favour it would be sustained? It will not do to say, that it should have been brought in the name of the committee, to whom the obligation was made; for the 18th section of the statute gives to successors the power to *appear* and *prosecute*, &c. " in their own names," " upon any contract," " as fully as those whom they succeed," " *might*, or *could do*, if they had not been removed." This clause, at once, recognises a disability in the former committee, to appear and prosecute, &c. and declares the power of their successors. It will hardly be pretended, that the action could have been maintained, by the inhabitants of the society; for that would be doing violence to the terms of the obligation.

It is objected, however, that the fund, secured by this bond, is not a *donation* for the support of the ministry; and, therefore, that the bond itself does not come within the purview of the statute. This argument proceeds upon an unwarranted assumption in point of fact. The legacy bequeathed by *A. G. Scott* was not, indeed, applicable to the support of the ministry; but the whole amount of this bond, by the condition of it, is applicable

say that the condition on which he was to become liable had never been performed.

The court adjudged, that the replication of the plaintiffs was sufficient, and for them to recover.

*Gould* and *Slosson*, for the plaintiffs.

*Bacon*, for the defendant.

[*Ex relatione amici.*]

to that use, and no other. We are not now seeking to recover the legacy, but the sum due on the bond.

2. In the second place, the defendants contend, that the consideration of this bond is illegal. They insist, that the act of the society, which is the consideration, was the desertion of a trust; and that this act was prejudicial to those for whose benefit the trust was created. Thus the bond is made to stand on the footing of contracts in fraud of third persons.

To this objection a variety of answers may be given.

First, it is denied, that any trust is created by the terms of the will. The testator bequeaths the interest of his notes and money first to his wife for her life; and then, at her decease, he directs, " that the principal shall belong to the parish of *New Stratford,* the interest of which is to be applied for the purpose of maintaining a free school in the *Centre District.*" There are no words apt to create a trust, let the bequest have been made to whom it may. The language of the testator, " that the principal shall belong," &c. most obviously imports a beneficial interest. It is true, that in this clause he directs the use; but this does not militate with the construction contended for. It is said, however, that the bequest is for the purpose of supporting " a free school in the *Centre District;*" and thus that it is made in trust for the inhabitants of that particular district. The answer is, that these words merely fix, or locate the school in the place, which, probably, in the judgment of the testator, was the most convenient for the inhabitants of the society. The phrase " free school" is, indeed, vague; but, when we see it used without limitation, it is natural to conclude, that the *school* was intended to be *free,* at least, to all persons concerned in the bequest. There is not a single expression in this clause, from

June, 1809.

BAILEY
v.
LEWIS.

which it can be collected, that the inhabitants of the *Centre District* were selected by the testator, as exclusively the objects of his bounty.

Secondly, whether a trust were created or not, still it does not appear that the society of *New Stratford* was appointed to execute that trust. This fact, being the sole foundation, on which this part of the defence rests, ought to have been distinctly averred in the plea. Yet it is nowhere averred, that the legacy in question was given to the inhabitants of this society, in trust, or otherwise. It cannot be concluded, therefore, that the society had any interest in the legacy, or that any trust was created, which it could have accepted, or executed. Nor, as the plaintiffs contend, was the bequest, in fact, made to that society. By the terms of the will, the sum bequeathed is given " to the parish of *New Stratford;*" but, it should be remembered, that this is not the corporate name of the society, and that a corporation cannot acquire a name by reputation.

But if this ambiguity can be aided by construction, or extrinsic evidence, so as to give the will effect, that construction ought to be resorted to, which involves the fewest difficulties. The intent of the testator most probably was to give the legacy to the school society within the limits of the same corporation, to support a free school, for the benefit of all the inhabitants to be located in the *Centre District.* This interpretation is the most liberal; it best comports with the language of the testator; and particularly, it saves the necessity of supposing a trust, which the terms of the bequest do, by no means, create.

Thirdly, if we admit that a trust of the precise nature claimed by the defendants, were in fact created, and that the society of *New Stratford* were appointed trustee;

still, we maintain, it would have been incompetent for that corporation to have accepted and executed it. All corporations, in this state, are created by statutes, which uniformly define and limit their powers: But we have no statute which gives to ecclesiastical societies the power to have the oversight and superintendance of schools, or to manage their funds. Indeed, we have one, which seems wholly to negate the existence of such powers; for it provides, that such societies "shall have *no* power to act on the subject of schooling."(*a*) But aside from this provision, the general rules of law do not permit the execution of such a trust, by a corporation, without a special delegation of authority. Judge *Blackstone* says, that a corporation "cannot be an executor, or administrator, or perform any personal duties." (1 *Bl. Com.* 504. 1 *Lev.* 227.) Aggregate corporations cannot be feoffees in trust for the use of others; (*Went. Off. Ex.* 17. 25.) nor can they be made joint-tenants, or trustees. (*Jac. Law Dict. Tomlins's* edit. tit. *Corporations.* 2 *Fonbl. Eq.* 143, 144. and cases there cited.) In short, such corporations cannot interfere with affairs foreign to their institution, and not necessary to the purposes or ends of it. On the other hand, it is the appropriate business of a school society to execute such a trust. It is one of the ends and purposes of its institution. But a school society, though constituted by law, within the limits of an ecclesiastical society, is yet a distinct corporation.(*b*)

Fourthly, supposing the strongest case which the defendants can claim; that the society of *New Stratford* was appointed trustee, and that it was fully competent to accept and execute the trust; still the conclusion, attempted to be drawn, does not follow. The inquiry

(*a*) *Stat. Conn.* tit. 10. c. 1. s. 6.

(*b*) *Stat. Conn.* tit. 10. c. 1. tit. 141. c. 1. 2 *Root*, 458, 460.

is, whether the entire contract between the society and the heirs of *A. G. Scott* be void, as being made in fraud of third persons? Before the affirmative of this question can be settled, it must be made to appear, first, that some act stipulated for, and to have been done in pursuance of the contract, tended to prejudice the rights of others; and secondly, that it was such an act as the party undertaking had no right to perform. It is believed, that in every case in the books under this head of unlawful contracts, these plain principles are recognised. In the cases of *Willis et al.* v. *Baldwin*, (*Doug.* 450.) and *Jackson* v. *Duchaire*, (3 *Term Rep.* 551.) which are the only authorities cited in this branch of the argument for the defendants, the acts stipulated for, and on the ground of which the contracts were holden to be illegal, tended directly to injure third persons. These cases, indeed, could not have been cited as determinations in point, but only as establishing or illustrating the general doctrine, on which this part of the argument for the defendants proceeds. The general doctrine, however, is not questioned; the only controversy is respecting its limitations.

We ask, then, was there any act to be done by the society of *New Stratford*, which that corporation had not a right to perform, or which tended to injure others? What has the society done, or obligated itself to do? It is nowhere averred, that any act has been performed, or agreed to be performed, *with an intent* to defraud. Indeed, for aught that appears from any direct averment in the plea, the contract was entered into with the most upright intentions.

What then is the ground of complaint against this contract?

1. That the society contracted, as it is alleged, to pre-

4

vent the fund created by the will of *A. G. Scott* from being applied to its appointed use. But it does not appear from the record that any such stipulation was made.

June, 1809.

BAILEY
v
LEWIS.

2. That the society, as a part of the contract, agreed to refuse, and did in fact refuse, the trust, *in considera-tion of a sum of money*, which the defendants obligated themselves to pay. But if the act of declining the trust were indifferent, or innocent in itself, its character is not altered by the circumstance that the society was paid for it.

3. That the sum secured by this bond is to be applied to support the preaching of the gospel. Yet, if this were even an unlawful use, which will hardly be asserted, the strength of the obligation would remain unimpaired.

4. That the society took upon itself to refuse or *desert* the trust, appointed by the will of *Scott*. To this aver-ment, we answer, that the society was not bound by the appointment of the testator, and, of course, has violated no obligation, by refusing the trust. The case is not, in this respect, distinguishable from that of an executor, or a testamentary guardian. Who will say, that one appointed to such a trust is bound, at all events, to ac-cept and execute it? It is not pretended, that the society had done a single act, prior to the date of the bond, from which an acceptance of the trust could be implied. The executor had caused the will to be proved and approved, and the defendants, who were heirs of *Scott*, had taken an appeal. Thus the matter stood; no trust had been accepted; no funds had been received; and, as yet, it was even doubtful whether the will would be established.

But further, the refusal of the society did not tend, in the smallest degree, to prejudice the rights of

HARVARD LAW SCHOOL LIBRARY

for whose benefit the trust, if any, was created. Those rights are left unimpaired. Upon a proper application, chancery will supply a trustee; and thus the funds provided by the will are still liable to be called out of the hands of the representatives of *Scott*, and applied to their proper use.  2 *Fonbl. Eq.* 146.

The plea of the defendants, therefore, goes merely to show, at most, that the bond is without consideration; not that it is illegal.  But it is an ancient and well established rule, that a mere want of consideration cannot be averred against a bond.

BY THE COURT.  In this case, two questions arise: First, whether this action can be supported by the plaintiffs, as successors in office to the obligees in the bond? Secondly, whether the bond is not void, as tending to defeat the obvious intentions of the devisor, and operating a fraud on third persons?

1. This bond being given to certain persons by name, the action might well have been brought in their names, upon principles of common law, although they are described as " committee;" and by the express words of the statute, the same powers are given to their successors to sue in their names, as the predecessors had.  The court are, therefore, of opinion, that the action is well brought.

2. But they consider the attempt to divert this fund from the objects of the devisor's bounty as unwarrantable in point of law, and a fraud upon those interested in the establishment of a school according to the will; and on this ground, the court affirm the judgment of the superior court.

Judgment affirmed.