CALDWELL *against* SIGOURNEY.

A promise made by one of two joint makers of a promissory note, to pay it, is sufficient to take it out of the statute of limitations as against the other; and this, although the person sought to be charged signed the note as surety of him who made the promise.

Where the defence to an action on a promissory note given for land in *Ohio*, conveyed to the defendant, was, that the land, at the time of the conveyance, was in the possession of third persons holding it adversely; but there being no evidence to show that this fact, by the laws of *Ohio*, would avoid the conveyance; it was held, that proof of it was inadmissible.

In *May* 1795, the General Assembly of this state appointed a committee, with power to sell and convey all the right, title and interest of the state, in and to the lands since called the *Connecticut Western Reserve*, in *Ohio*. On the 5th of *September* 1795, this committee sold such lands; and on the same day, the purchasers, taking the name of the *Connecticut Land Company*, entered into articles of association and agreement, by which it was provided, among other things, that the shares in the purchase should be conveyed in fee to *B*, *C* and *D*, to be held by them in trust for the proprietors, and when certain things were accomplished, these trustees should convey to each of the proprietors his proportion of the land in severalty; and the purchasers immediately afterwards, executed such a conveyance to the trustees, according to the provisions of the articles of agreement. From the minutes of a meeting of the *Connecticut Land Company*, held in *January* 1809, it appeared, that the property of the company was then divided among the proprietors; and the meeting was adjourned without day; since which no meeting of the company has been held. In *March* 1836, the trustees, on the application of *L*, executed to him, for the consideration of 900 dollars, a quit-claim deed, expressed to be at the sole risk of *L*, and without any covenant of seisin or warranty, of a parcel of land in the city of *Cleveland*; and *L*, in consideration thereof, gave to each of the trustees a promissory note for 300 dollars. In an action on one of these notes, it was held, that the matters above stated did not, by legal construction, show, that the proprietors of the *Western Reserve* had any interest in, or equitable title to, the land conveyed to *L*, when the deed was executed; nor if they had, could the court pronounce the transaction fraudulent, or a breach of trust; consequently, the jury having negatived actual fraud and collusion, it was held, that such matters constituted no defence to the action. [The Ch. J. dissenting.]

THIS was an action of *assumpsit*, brought by *Rachel Caldwell*, administratrix of *John Caldwell*, deceased, against *Charles Sigourney*, as the surviving maker of a promissory note.

The cause was tried at *Hartford, September* term 1847, before *Hinman*, J.

On the trial, the plaintiff introduced in evidence a promissory note of the tenor following:

" *Hartford, March* 23, 1836.

"$300.   For value received, I, *Thomas Lloyd*, as principal, and *Charles Sigourney*, as surety, promise to pay *John Caldwell*, or order, three hundred dollars, on or before the 1st day of *April*, in the year 1837, with lawful interest till paid.

*Thomas Lloyd.*
*C. Sigourney.*"

The making of the note was admitted; and the plaintiff introduced evidence proving a promise, by *Lloyd*, to pay it, within six years before the commencement of this suit.

The defendant introduced in evidence a deed from *Jonathan Brace, John Caldwell* and *John Morgan*, to *Thomas Lloyd*, of the same date with the note; of which deed the following is a copy:

" To all people to whom these presents shall come, greeting.   Know ye, that whereas upon the application of *Thomas Lloyd*, of *Hartford*, in the state of *Connecticut*, representing to us, the subscribers, trustees of the late *Connecticut Land Company*, that there remains a small piece or parcel of vacant land, lying on the waters of lake *Erie*, in the town of *Cleveland* and state of *Ohio*, bounding *Northerly* on said lake, *Westerly*, on the *West* line of said town, as first laid out, *Southerly*, on lands heretofore conveyed by us, as trustees aforesaid, to sundry individuals, original proprietors, and *Easterly* thirteen rods *East* of the *East* line of *Bank* street, in the city of *Cleveland*.

" Now, therefore, upon said application and representation, and at the sole risk of said *Thomas Lloyd*, and without any covenant of seisin or warranty from us, respecting the title or quantity of said land, and for the consideration of nine hundred dollars, we do hereby, in our said capacity as trustees of said company, release and quit-claim to him, the said *Thomas Lloyd*, and to his heirs forever, all the right, title and interest, which we, as trustees aforesaid, have to said piece or parcel of land, or any part thereof, if any there be, not before conveyed by us, lying and being within the bounds above described; expressly reserving to all persons, any legal right or title, which they may have to the same.

" In witness whereof, we have hereunto set our hands and seals, the 23rd day of *March, Anno Domini* 1836.

Signed, sealed and delivered,   *Jonathan Brace.* [L. S.]
in presence of *F. A. Bunce,*    *John  Caldwell.* [L. S.]
              *Seth Terry.*     *Jno. Morgan.* [L. S.]"

This deed was duly acknowledged, and recorded in the office of the recorder of *Cuyahoga* county, *Ohio.*

It was admitted, that the nine hundred dollars, mentioned therein, as the consideration thereof, was divided into three notes of three hundred dollars each, all signed by *Lloyd* and the defendant *Sigourney;* and one of them was payable to *Jonathan Brace,* one to *John Morgan,* and the other to *John Caldwell,* being the note in suit.

The defendant then introduced in evidence a resolve of the General Assembly of this state, passed at its session in *May* 1795, appointing a committee, who were fully authorized and empowered to negotiate with any person, for the purchase of the lands belonging to this state, lying *West* of the *West* line of *Pennsylvania,* and to form and complete any contracts for the sale of said lands, and to make and execute, under their hands and seals, to the purchasers, a deed or deeds, duly authenticated, releasing, in behalf of this state, all right, title and interest, juridical and territorial, to them and their heirs. It was provided also, by such resolve, that if the committee should find it would be most beneficial to the state, or its citizens, to form several contracts for the sale of said lands, they should not consummate any of such contracts, apart by themselves, while the others were lying in a train of negotiation only, but that all of the contracts, which, taken together, should comprise the whole quantity of said land, should be consummated together, and the purchasers should hold their respective parts or portions as tenants in common, and not in severalty.

The defendant also introduced in evidence the articles of association and agreement of the *Connecticut Land Company,* by which it was agreed, among other things, that the committee appointed for purchasing the *Western Reserve,* should receive from the committee of whom the purchase was made, the deeds executed to the purchasers, and retain them in their hands, until the proprietors thereof respectively should execute a deed to *Jonathan Brace, John Caldwell* and *John Morgan,* and the survivor of them, and his heirs forever, to be held *in trust,* for such proprietors respectively, and to be disposed of as directed and agreed in said articles: that when the *Indian* title to said land should be extinguished, and the land surveyed as therein provided for, said trustees, or a

majority of them, should convey to each of said prorietors, or any number who should agree, his or their proportion or right therein, in severalty.   The mode of dividing said property, was also provided for in said articles.   Provision was also made for the appointment of a board of directors for the company, consisting of seven persons, whose powers and duties were prescribed.   It was further agreed, that the directors, in transacting the business of the company, should be subject to the controul of the company, by a vote of at least three fourths of the interest thereof.

The defendant also introduced in evidence the deed of the proprietors of the *Western Reserve* lands, to said *Brace, Caldwell* and *Morgan,* dated *Sept. 5th* 1795, by which said proprietors released, quit-claimed and conveyed to said grantees, and to the survivors and survivor of them, all their right, title and interest, juridical and territorial, in and to the premises, *viz.* the lands of *Connecticut* lying *West* of the *West* line of *Pennsylvania,* in *trust* for the benefit and behoof of the grantees, and their associates, and their respective heirs and assigns, according to the terms, provisions, restrictions, covenants and agreements, contained in said articles of agreement.

The defendant also introduced in evidence the record of proceedings of a meeting of the *Connecticut Land Company,* held at the state-house in *Hartford,* on the 4th day of *January* 1809, being the last meeting held by that company. At this meeting the following votes were passed:

" The committee appointed to audit the accounts of the directors to the present time, made two several reports ; and it was *voted,* that said reports be accepted and approved, and kept on file.

" The committee appointed to divide the company's property, consisting of notes, contracts for land, book debts and land, into forty-six parts, made report ; which report was accepted and approved.

" The committee appointed to class the proprietors, according to their respective interests, into forty-six classes, in order to divide the property now belonging to the company, report, that they have proceeded to class the proprietors, into forty-six classes. [The classification was then specified.]   The company proceeded to draw, in the manner following, in

conformity to the mode of partition. [The results of the drawing were then detailed.] *Voted,* that the obligations and contracts, which have been divided to the members of the company, be delivered to *Turhand Kirtland* Esq., and that *Ephraim Root* Esq. take his receipt therefor, specifying said obligations and contracts, and that said *Kirtland* is accountable therefor to the persons to whom divided, according to their respective interests therein, reserving the right of proprietors to receive of said *Root* such of said obligations and contracts as they may be entitled to, the same being applied for, within three months of the present time.

*Voted,* that this meeting adjourn without day."

It was admitted, that said *Morgan* survived said *Brace* and *Caldwell,* and that he had since died.

Upon this evidence, the defendant claimed, that the release to *Lloyd* of the land contained in the deed of *Brace, Caldwell* and *Morgan,* and their agreement in relation thereto, was a breach of trust—a fraud upon the rights of third persons—and was illegal; and that the note in suit, given in consideration thereof, was illegal and void. He also claimed, that said evidence proved, that it was agreed by and between said trustees and *Lloyd,* that they should desert their trust, and convey said land so held by them in trust, to *Lloyd,* for his own use forever; and that he should give his note, with surety, to each of said trustees, for the sum of 300 dollars, to his own use, in his individual capacity; and that the note in suit was the one so given to said *Caldwell;* and if so, the plaintiff could not recover; and the defendant claimed, that the court should so instruct the jury.

The court did not so instruct the jury, but charged them, that these papers, in connexion with the admitted facts in the case, did not, as matter of law, amount to a defence to the note: that inasmuch as the trustees had power to sell the land, a *bona fide* purchaser from them, would obtain a perfect title, by their deed; and that it was no defence to a note given for such purchase, to say, that the trustees had no equitable right to sell; that if *Lloyd* was not a *bona fide* purchaser, by reason of his knowledge of the trust, as it appeared upon the face of his deed, then, in the opinion of the court, he, if alive, could not be permitted to set up his own fraud, as an answer to the note; and that, in this respect, the de-

*Hartford,*
*June, 1848.*
_____
Caldwell
*v.*
Sigourney.

fendant, as a joint maker of the note, was in the same condition as *Lloyd* himself would be, if alive, and a defendant in the suit: that the papers, therefore, in connexion with the admitted facts, do not show any such fraud or breach of trust, as is sufficient to avoid the note : but that, if there was any actual fraud—if there was a conspiracy between *Lloyd* and the trustees to commit a fraud upon the proprietors of the *Land Company,* and the deed and note in question were given in pursuance of it, then the note was void, and the plaintiff could not recover ; and that the jury, in determining this question, would take into consideration all the evidence before them.

In the course of the trial, the defendant introduced sundry depositions, to prove that the land conveyed by the trustees to *Lloyd,* was, at the time of the conveyance, held adversely, by the city of *Cleveland,* and by one *Levi Johnson,* who were in possession thereof, by their tenants, denying the title of the trustees and of *Lloyd ;* and he claimed, that it was a question of fact to be submitted to the jury, whether the title so conveyed was a pretended title. But there being no evidence that by the law of *Ohio,* the validity of the deed would be impaired, and no other evidence of the title so conveyed being a pretended title, having been given or offered, the court regarded such depositions as inadmissible, and ruled them out.

The defendant further claimed, that as it appeared from the note, that he was a mere surety, and as he had done no act to extend his liability beyond six years after the note became due, the promise of *Lloyd,* without the defendant's knowledge or consent, would not take the case out of the statute of limitations as to him.

But the court instructed the jury, that the promise by *Lloyd,* if made without collusion, while the note was due, and before the statute had attached to it, and within six years before the commencement of this suit, was sufficient to take the case out of the statute, both as to *Lloyd* and the defendant.

The plaintiff obtained a verdict ; and the defendant moved for a new trial.

*Toucey,* in support of the motion, contended, 1. That the

transaction, upon the documents and facts given in evidence and admitted, was a fraud upon third persons.

The conveyance to *Lloyd,* who was not one of the *cestui que trusts,* for his individual use, and for a consideration received by the trustees as individuals, was a breach of the trust—a diversion of the fund from the object for which it was placed in their hands. In *Bailey* v. *Lewis, 3 Day,* 450. a fund was bequeathed to an ecclesiastical society, the interest of which was to be applied to the support of a free school, and the society undertook to apply it for the support of the gospel ministry ; it was held, that such a diversion of the fund was a fraud upon third persons, and that a bond given by the defendants to effect that object, was void. In this case, both *Lloyd* and the defendant may avoid the note in suit, on similar ground. Of the two cases this is the stronger one.

2. That the case, at any rate, was not correctly put to the jury. The charge put the case upon actual fraud and conspiracy, to be found by the jury ; whereas if the fact of the agreement was found, it was a constructive fraud, without looking further for actual fraudulent intent and combination.

*Parsons,* contra, insisted, 1. That the deed having been made at *Lloyd's* request, there was a sufficient consideration for the note. *Clark* v. *Sigourney,* 17 *Conn. R.* 517.

2. That the acknowledgment and promise of *Lloyd,* takes the case out of the statute of limitations as to both. *Clark* v. *Sigourney,* ubi sup.

3. That the agreement between the trustees and *Lloyd,* was no breach of trust, or fraud upon third persons. What are the facts ? The title to all the land of the *Land Company* had been conveyed to these trustees ; and they only could give deeds. By the articles of association, the portion of each proprietor was to be assigned to him ; and when he received his deed from the trustees, he ceased to be a member of the company. All the land had been distributed to proprietors previous to the meeting in 1809 ; and the company then voted to dissolve, and have never held a meeting since. Their powers were exhausted, and the company became extinct. In 1836, twenty-seven years afterwards, *Lloyd* finds a parcel of land, which he claims belongs to the *Land Com-*

*pany.* The trustees, it would seem from expressions in the deed, deny any title in themselves, or the company. *Lloyd* and the defendant offered to take such title as they had: this they received, and gave the note in suit. Now, how are the company defrauded? If they owned no land, nothing passed by the deed, and they are not injured. If they did own the land, then the trustees, and they only, had the power and right to convey it, and are accountable to the *Land Company,* or their heirs, for the avails. It is the duty of the trustees to collect the purchase money. But whether they are accountable or not, is a matter that the defendant has no concern with. His duty is to perform his contract: and then the law will take care of the money, and give it to whom it belongs.

The case of *Bailey* v. *Lewis,* is not in point. For, in the first place, there was, in that case, actual fraud—an agreement to deprive the school district of their rights. Secondly, it was an executory contract: nothing had vested, and could not, until the death of Mrs. *Scott;* and the court refused to enforce the bond, but left the parties as they originally stood.

STORRS, J. No exception has been taken before us to the exclusion of the testimony in regard to the possession of the land released to *Lloyd,* or the charge of the court below as to the effect of his promise to avoid the statute of limitations. The first was plainly correct; and the other is sanctioned by repeated decisions of this court. *Clark* v. *Sigourney,* 17 *Conn. R.* 511. These topics may, therefore, be dismissed, without further remark.

The execution of the note in question being admitted, the defendant introduced in evidence, 1. A resolution of the General Assembly of this state, passed at its *May* session in 1795, appointing a committee, with power to sell and convey all the right, title and interest of the state, juridical and territorial, in and to the lands since called *The Connecticut Western Reserve,* under certain restrictions not necessary here to be noticed, except that it was to be all sold together; and it was admitted, that in pursuance thereof, the said committee sold the same, and on the 5th day of *September* 1795, executed to the purchasers conveyances thereof.

2. Articles of association and agreement, entered into *September* 5th, 1795, between the persons concerned in said

*Hartford,*
June, 1848.

Caldwell
*v.*
Sigourney.

purchase, by which it was agreed, among other things, that they should be called *The Connecticut Land Company* ; that the deeds executed to said purchasers, should be retained by a committee appointed by the applicants for purchasing said land, until the proprietors thereof should convey in fee their respective shares in said purchase to *John Caldwell, Jonathan Brace* and *John Morgan,* and their survivors, to be by them held in trust for such proprietors, and disposed of as directed and agreed in said articles ; and that when the *Indian* title to said land should be extinguished, and the land surveyed as therein provided for, the said trustees, or a majority of them, should convey to each of said proprietors, or any number who should agree, his or their proportions or right therein, in sever-alty ; the mode of dividing said property being also provided for in said articles. This embraces substantially all the powers conferred and duties imposed on said trustees, by said articles ; and nothing further is contained in them, which is material to this case.

3. A conveyance by release, made *September* 5, 1795, by said purchasers from the state, to the said persons named as trustees, of the said property, in trust for the benefit of said purchasers and their associates, and their respective heirs and assigns, according to the terms, provisions, restrictions, cove-nants and agreements contained in the said articles of agree-ment ; to which reference is expressly made in said convey-ance, in the same manner as if they were therein recited at full length.

4. Minutes of a meeting, and conceded to be the last, of the said *Land Company,* held *January* 5, 1809, from which it appeared, that the property of said company was then di-vided between the proprietors, in the manner therein men-tioned.

5. A deed of the 23d *March* 1836, from the said trustees to *Thomas Lloyd,* in which, after reciting that he had made an application to them, representing that there remains a small piece of vacant land in the town of *Cleveland,* (of which the boundaries are then given,) they, "upon said ap-plication and representation, and at the sole risk of the said *Thomas Lloyd,* and without any covenant of seisin or war-ranty from [them] respecting the title or quantity of said land, and for the consideration of nine hundred dollars,

*Hartford,*
June, 1848.

Caldwell
*v.*
Sigourney.

[thereby] release and quit-claim to him, the said *Thomas Lloyd*, and to his heirs forever, all the right, title and interest, which [they] as trustees aforesaid, have to said piece or parcel of land, or any part thereof, if any there be not before conveyed by [them,] expressly reserving to all persons any legal right or title which they may have to the same."

It was admitted, that the 900 dollars mentioned in said deed, as the consideration thereof, was equally divided into three notes, all signed by *Lloyd* and the defendant, of which one was payable to said *Morgan*, one to said *Brace*, and the other was the note in question in this suit.

No other testimony was adduced relating to the defence which we are now considering.

Upon this evidence, the defendant claimed, that the said release to *Lloyd* and the agreement between him and said trustees in relation thereto, was a breach of the trust on which the conveyance was made to the latter, by the proprietors of *The Connecticut Land Company*, and a fraud on the rights of said proprietors ; and that, therefore, the note in suit, given in consideration thereof, was void ; and that the court should so instruct the jury.

This was not a claim that the court should submit this evidence to the jury, for them to find, as a question of fact, whether there was any such breach of trust or fraudulent agreement ; but the court were requested to instruct them, that the legal effect of this evidence was, to show that the note was in fact given in consideration of an agreement between *Lloyd* and said trustees, which, in connexion with the execution of the release to the former, constituted a breach of trust on the part of said trustees, and a fraud on the rights of *cestui que trusts*, the proprietors of the *Land Compauy.* The defendant presented this claim to the court below, as a mere question of law, on the face of the evidence, and requested the judge to dispose of it accordingly ; and as such it is now presented before us for revision.

We think, in the first place, that in order to sustain this claim, it was necessary that the evidence on which it was made, should be such that the court below could judicially decide, that such proprietors had some interest in the land released to *Lloyd*, when the deed was executed to him by the trustees ; because, if they had not then any such interest,

the tendency or effect of the transaction out of which the *Hartford,* June, 1848.
note in question originated, could not have been to injure or defraud them ; and therefore, the ground on which this claim was placed, would fail. If they had any such interest, it was an equitable title to the land of which the trustees held the legal title for their benefit. If they had no such equitable interest, they could not be injured, by any conveyance made, or attempted to be made, by the trustees. A breach of trust respecting this land, on the part of the trustees, on the ground of which alone the defence, which we are now considering, was placed, necessarily implies, that they had the legal title to it for the use of the proprietors ; and that they had unlawfully disposed of it, for other purposes than those for which it was vested in them. Of course, no such breach of trust could appear in this case, unless it appeared that the land released to *Lloyd* was subject to such use in the hands of the trustees.

*Caldwell v. Sigourney.*

But we are of opinion that the judge below could not properly have taken it on himself to decide, that the evidence introduced by the defendant, by legal construction, proved, that those proprietors ever had any interest in said land, or that consequently, *Caldwell, Brace* and *Morgan* ever held it in trust for them. There was plainly nothing which tended to show this, unless it was the release to *Lloyd*, in connexion with the notes given for the consideration of it. Whether, if it were to be submitted as a question of fact to the jury, for them to find, from this evidence, whether there was such an interest, the release and notes would be admissible for the purpose of showing it, it is not necessary, in the point of view in which the case is presented to us, to determine. That would be a very different question from the one now before us. The enquiry here is, not whether there was evidence which was relevant, or conduced to prove that fact, but whether the release and notes legally imported of themselves, or furnished evidence conclusive in itself, independent of any further testimony, to prove that the proprietors or trustees had any interest in the land released. We are clearly of opinion, that they had not that effect ; and therefore, that the court below could not dispose of the case on the evidence of the defendant, as a question of law ; it not being its province to find facts from evidence inconclusive in its nature, but only

*Hartford,*
June, 1848.

Caldwell
*v.*
Sigourney.

to decide upon facts admitted, or found by the jury or otherwise, or proved by testimony which the law deems conclusive. A mere release of land, in the ordinary form of what we term quit-claim deeds, does not import that the releasor has any estate or interest whatever in the property : and we are inclined to think, that such an instrument, or the fact of its execution, would not, unconnected with any other evidence, conduce to prove, for any purpose, or between any parties, that he had such an interest. It is not in fact, nor are we prepared to say that it would be deemed in law, a declaration to that effect. But the release to *Lloyd*, in this case, is so carefully expressed in regard to the interest of the releasors in the land, that it is evident that it was their special object to exclude the idea that they intended to assert that they had any such interest : and it would seem to be a palpable perversion of their meaning, to attach to it, and conclusively too, a different import; and we are aware of no principle that requires it. And with respect to the notes executed for the consideration of that release, they at most only constitute evidence from which an inference might be derived on this subject, but which it was not the duty of the court to deduce.

In the next place, if it be conceded, that the law is so, that the note in question is void, if given in pursuance of a fraudulent agreement between the trustees and *Lloyd* to divert the trust property held by the former from the purposes of their trust ; and it is also conceded, that the land released to *Lloyd* was a portion of that which was conveyed to said trustees in trust for said proprietors ; and that they, contrary to the terms of said trust, conveyed it to *Lloyd*, on an agreement that the purchase money should be paid to the trustees, or either of them ; it would not, in our opinion, be a case where the court, on the evidence introduced by the defendant, could, as a mere conclusion of law, decide, that the transaction was fraudulent, and the note consequently void. Such conveyance would indeed be a departure from the terms of the trust ; but it would not, for that reason alone, necessarily, be unlawful or fraudulent as to the *cestui que trusts*. Whether it would be so, would depend on the circumstances attending it. It might have been given in pursuance of an agreement for that purpose between the grantee and *cestui*

que *trusts*, in which case, so far from being fraudulent, it would be not only entirely innocent, but the performance of duty on the part of the trustees.   Or it might have been executed under a great variety of other circumstances, which may be supposed, which would make it lawful.   Neither would the fact that payment of the consideration was to be made to the trustees, make the transaction necessarily and in law fraudulent: indeed, that would not be inconsistent with an intention to account for it to the *cestui que trusts*.

We therefore think, that this case did not present a question of legal construction upon the evidence for the court to decide ; but at most, only a question of fact, to be submitted to the jury, as to the agreement out of which the note in question originated, and the intention with which it was made. That question was the one which the court below submitted to the jury, namely, whether the deed to *Lloyd* and the note in suit were given in pursuance of a conspiracy between *Lloyd* and said trustees to commit a fraud upon the proprietors of the *Land Company*.   On this question the evidence introduced by the defendant was relevant, and it was the province of the jury to determine its weight.

The views which we have thus taken of the principal point made on the trial, renders in unnecessary to examine the other questions which have been argued before us.

The result is, that a new trial should not be granted.

In this opinion WAITE, HINMAN and ELLSWORTH, Js. concurred.

CHURCH, Ch. J. dissented on the principal point.   In the case of *Clark* v. *Sigourney*, in which this note was the subject of discussion before us, I concurred in the opinion then expressed, and am now satisfied of its correctness upon the questions then presented and decided.   But as I now think, the true nature of the consideration of this note was neither discussed nor determined in that case.   We said only that a quit-claim deed, executed at the special request of the grantee, although it conveyed no title, constituted a legal consideration of a note given for the purchase money—that it was a bargain of hazard, and the responsibilities were not to be changed, by the result.

On the present hearing, the bearing of other facts upon the transaction in question, is urged upon us; and I cannot resist the impression, that they show an infirmity in this note, which the law cannot sustain or approve. I do not know that I dissent from the general principles now laid down by the court, as controuling its decision in this case; but it seems to me, that they do not reach the difficulty, and are not the true principles upon which this defence essentially rests.

*Caldwell* and others were trustees of the *Connecticut Land Company*, and the irpowers and duties are defined, by the articles of association, and the indenture between the trustees and the proprietors of the *Western Reserve.* By these, the trustees have no power to execute deeds, except to proprietors, or in conformity to the orders and direction of the board of directors of the company. Indeed, they were only instruments or agents, by whom the territory was to be aparted in severalty, that each proprietor might receive his several legal title.

These trustees, in executing the deed to *Lloyd*, acted only in their fiduciary capacity, and they so declare on the face of the instrument itself, although they describe themselves as trustees of the *late Connecticut Land Company.* It no where appears, however, that that company had been dissolved; and if it had been, then the whole action of *Caldwell* and others professing to be trustees in this transaction, was a farce, if not a fraud; and if any land remained undisposed of, as stated in the deed, each proprietor still had an interest in it, notwithstanding the dissolution of the company, which these individuals had no right, legally or morally, to dispose of, and pocket the avails.

Although the deed was executed by these gentlemen, as trustees, yet the notes which they received as the consideration, were of a different import. These were executed to each trustee, severally, and, as is conceded, for his own individual benefit, and as it would seem, either to induce them to perform a trust duty for a large compensation, which they were bound to perform without a price, or as a persuasive to violate a duty, by executing a conveyance in a capacity and under a pretence, in which they had no right to act. If a public officer has no right to demand a compensation or reward for the performance of an act of duty, beyond the fixed fees of

office, it would be a violation of the same salutary principle, to recognize in trustees appointed for a great public purpose, as these essentially were, a right to stipulate for such a reward as was here promised.  1 *Rolle's R.* 313.  *Latch's R.* 54.  *W. Jones,* 65.  1 *Hawk. P. C. ch.* 68. *sec.* 4.  *Lane* v. *Sewall,* 1 *Chitt. R.* 175. (18 *E. C. L.* 61.)  *Dew* v. *Parsons, Id.* 295. (18 *E. C. L.* 87.)  *Morris* v. *Burdell,* 1 *Campb.* 218.  *Bilke* v. *Havelock,* 3 *Campb.* 374.  *Preston* v. *Bacon,* 4 *Conn. R.* 472.  *Hatch* v. *Mann,* 15 *Wend.* 44.

It was suggested in the argument, that this transaction was to be considered as a private affair between *Lloyd* and the trustees, in which the *Land Company* had no concern, because it did not appear certainly, that the land described in the deed belonged to the company.  We cannot presume this: the character of the entire transaction forbids it.  On the contrary, the language and import of the deed, as well as the large sum paid, leads me to the conclusion, that the object was, to transfer a title, or at least to prevent the *Land Company*, or the proprietors, from claiming a title ; and such would be the legal effect of the deed, if it was in truth executed under the powers existing in the trustees.  If this was not its purpose and effect, then the execution of the deed was a mere frivolous ceremony, which cannot be said to furnish a good consideration for the note.  1 *Sw. Dig.* 208.

Some legal consequence was intended to follow from this deed ; and it must be treated, as I think, as a dealing with trust property, by trustees, *not for the benefit of the cestui que trust*, but for their own individual profit, and for a purpose not authorized by the nature and object of the trust.  And if it had no other effect, its tendency was, to throw a cloud and embarrassment about the rights of the *Land Company*, or the proprietors of the *Reserve*, which was unnecessary and improper.

The power of a trustee exists only for the benefit of the *cestui que trust ;* and he is not permitted, on his own account, to speculate with the trust estate, even if no actual injury is shown to result.  His duties, which are fiduciary, are quite inconsistent with such a practice.  Courts, especially in modern times, have taken care to guard, with great caution, the rights of those whose interests have been placed under the direction and controul of others, and have not permitted trus-

*Hartford,*
June, 1848
———
Caldwell
*v.*
Sigourney.

tees, guardians, executors, &c., to place themselves in situations where inviting opportunities are afforded for a dangerous conflict between duty and self-interest.  Such persons may not take advantage of the position which they occupy, to obtain personal benefit to themselves.  This is a conservative principle, which may be more safely extended than relaxed in its application.  Trustees, guardians and others, standing in these confidential relations, have all the means, both of knowledge and power, in their own hands, which are neither known nor possessed by those for whom they act, and whose exclusive interest they are bound to protect.  Every thing done by them ought to be transacted in the most open and frank manner.  But, in the case before us, we have an instance, in which the real purpose of the parties is involved in mystery.  We see here a deed, executed professedly in execution of a trust ; and yet the consideration is put into the pockets of the trustees, without any explanation.  And although the *cestui que trust* are not here the complaining parties, and perhaps because they know nothing of the affair ; yet such a transaction, in my judgment, is a violation of legal policy, and should not receive the sanction of this court, nor be holden to constitute a good consideration of the note in suit. *Schieffelin* v. *Stewart,* 1 *Johns. Ch. R.* 620.  *Brown* v. *Rickets,* 4 *Johns. Ch. R.* 303.  *Ringo* v. *Binns,* 10 *Peters,* 270. *Michaud* v. *Girod,* 4 *Howard,* 504.  *Bailey* v. *Lewis,* 3 *Day,* 450.  *Nichols* v. *Ruggles, Id.* 145.  *Faucett* v. *Whitehouse, Russ. & Mylne,* 132.

New trial not to be granted.